In re Mary Lou BRAYMER, Debtor.

BANC ONE, TEXAS, N.A., Plaintiff,

v.

Mary Lou BRAYMER, Defendant.

Bankruptcy No. 190–10418–7.
Adv. No. 191–1001.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

May 3, 1991.

Thomas M. Wheeler, Abilene, Tex., for Banc One Texas, N.A.

Gary Connally, Hamlin, Tex., for debtor.

## MEMORANDUM OF OPINION ON OBJECTIONS TO DISCHARGE

JOHN C. AKARD, Bankruptcy Judge.

Banc One, Texas, N.A. (Banc One) objected to the discharge of Mary Lou Braymer (Debtor) under § 727(a)(3) and (4) which read as follows:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account. . . .

The Debtor asserted that any misstatements she may have made at creditors' meetings or in schedules filed in this court were the result of misunderstanding or

confusion or were made on the advice of her attorney. The court finds that the discharge should be denied.

## FACTS

On September 12, 1990 the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code [1] in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, where the case was assigned 590–50525. The petition stated that the Debtor resided in Abilene, Texas, and that Dan Fergus, Jr., of Abilene, Texas, represented her.[2] No list of creditors was filed with the petition. On September 21, 1990 the ·Clerk of this court issued a notice pursuant to Local Bankruptcy Rule 1002(b) instructing the Debtor to file a matrix within 48 hours. On September 25, 1990 the Debtor filed a matrix which listed eight creditors.

No statements and schedules were filed by the first meeting of creditors which was held November 6, 1990. However, at that meeting, the Debtor presented statements and schedules she signed more than a month previously. (Tr.5) She swore that they were true, complete and accurate. Mr. Fergus stated that he would file the statements and schedules. (Tr.28). During the creditors' meeting a number of discrepancies were uncovered. Subsequently, Mr. Fergus made changes in the statements and schedules. He discussed the changes with the Debtor by telephone and filed the statements and schedules on November 14, 1990 (although the Debtor's signature was dated October 8, 1990). The Debtor signed the statements and schedules under penalty of perjury. These schedules listed thirteen creditors.

The statement of current income and current expenditures filed November 14, 1990 indicated that the Debtor had gross income as a travel consultant .of $1,000.00 per month, net oil income of $700.00 per month

and a $2,000.00 per month director's fee from Robertson Oil Company, Inc. Her monthly expenses totaled $3,067.35 including $250.00 for home repairs. However, no creditor was listed for repairs to the home. A new set of statements and schedules was filed March 26, 1991 at the commencement of the hearing on objections to discharge. Although the statement of income and expenses contained the same totals, it did not list the $250.00 per month in home repairs.

On November 15, 1990 the court transferred the case to the Abilene Division of the United States Bankruptcy Court for the Northern District of Texas where it was given Case No. 190–10418.[3]

## DISCUSSION

■ In determining Banc One's complaint, the court principally considered the statement of affairs and schedules filed November 14, 1990; not those filed March 26, 1991. The court finds the latter were an obvious attempt to belatedly respond to Banc One's complaints. While a debtor can amend his or her schedules at any time before a case is closed, that right does not exist where there is a showing of bad faith or prejudice to creditors. *In re Jelinek,* 97 B.R. 429 (Bankr.N.D.Ill.1989) (citing *In re Doan,* 672 F.2d 831, 833 (11th Cir.1982)).

■ The Debtor showed a complete disregard for the Rules of Bankruptcy Procedure (Rules). The Rules mandate that the Debtor *"shall* file with the petition a list containing the name and address of *each* creditor...." (emphasis added). Rule 1007(a)(1). The petition when filed included no list of creditors. It was only after the Clerk threatened dismissal of the case that the Debtor filed a matrix listing eight creditors. In addition, the Rules require statements and schedules to be filed with the petition or within 15 days thereafter. Rule

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

**2.** Mr. Fergus also represents Robertson Oil Company, a company controlled by the Debtor's sister. The Debtor served as a member of its

Board of Directors. She is now represented by a different attorney.

**3.** Lubbock and Abilene are divisional offices of the United States Bankruptcy Court for the Northern District of Texas. They are approximately 160 miles apart.

1007(c).[4] The Debtor did not request an extension of time and did not file the statements and schedules for more than two months after her petition. When they were filed, thirteen creditors were listed on the schedules, but the court's records do not show that the Debtor ever noticed the additional creditors as required by Local Bankruptcy Rule 1009(c) or that the Debtor filed an amended matrix as required by Local Bankruptcy Rule 1009(b). The statements and schedules the Debtor filed March 26, 1991 added no additional creditors; they merely listed assets in response to Banc One's objections. The burden is on debtors to use reasonable diligence in completing their schedules and list of debts. *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212 (Bankr. 9th Cir.1987). The court finds the Debtor did not carry that burden.

■ The Debtor's statements and schedules did not mention a trust created by the will of her father, French M. Robertson, who died in 1976. The bulk of his estate was left in trust with his wife, Mary Louise Robertson (who is still living), as the income beneficiary for life. Upon her death the property will be divided into two trusts; one for the Debtor and one for her sister. The Debtor is the income beneficiary of her trust until her death, at which time the assets of the trust are to be divided among her children. The Debtor listed her personal property on Bankruptcy Schedule B–2. Question v. of that schedule required the Debtor to list "Equitable and Future Interests, Life Estates, and Rights or Powers Exercisable for the Benefit of the Debtor (other than those listed in Schedule B–1) (specify all written instruments relating thereto)". The Debtor made no entry with respect to this listing except the figure "–0–" in the market value column. Ques-

tion 7 of the statement of affairs asks "Is any other person holding anything of value in which you have an interest? (Give name and address, location and description of property, and circumstances of the holding.)" The Debtor responded "No". The trust created by Mr. Robertson's will should have been listed in response to these questions. By these omissions the Debtor made a false oath. A debtor's duty is to completely and honestly answer questions in a petition. *Interfirst Bank v. Morris (In re Morris)*, 58 B.R. 422, 427 (Bankr.N. D.Tex.1986) (citing *In re Tabibian*, 289 F.2d 793, 797 (2nd Cir.1961)). This Debtor did not fulfill that duty.

■ The Debtor failed to list her ownership of Robinson–Sharidge Service Company which furnishes water for a water flood project on the Banks Lease in Scurry County, Texas. The list of real property showed the Debtor's undivided one-fourth interest in the Banks Lease, but made no mention of the water flood project. The Debtor testified that when she listed the Banks Lease she felt that included Robinson–Sharidge Service Company. This business was shown on Schedule C of her 1988 Federal Income Tax Return as a sole proprietorship with net income of $3,235.00. The court finds that the failure to list this company was an intentional omission and a false oath. A debtor must be scrupulous in giving notice of all assets to which others may make a legitimate claim, and may not avoid questions by failing to disclose the asset even though he or she may think it may be theirs to keep. *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 616 (Bankr. 9th Cir. 1988).[5]

The Debtor did not list an obligation to her mother in the form of an oil production payment in the original amount of $220,-

**4.** Rule 1007(c) reads in pertinent part as follows:

(c) Time Limits. The schedules and statements, other than the statement of intention, *shall* be filed with the petition in a voluntary case, or *if* the petition is accompanied by a list of all the debtor's creditors and their addresses, within 15 days thereafter.... Any extension of time for the filing of the schedules and statements may be granted only on motion

for cause shown and on notice to any committee, trustee, examiner, or other party as the court may direct (emphasis added).

**5.** Although *Woodson, supra,* dealt with a Chapter 11 debtor who did not schedule property acquired post-petition, the court's language is even more appropriate where, as here, the Debtor knew of the asset when she filed her petition.

000.00, although it was referenced in the description of the Banks Lease on schedule B–1. The production payment is paid out of the first monies payable to the Debtor on the Banks Lease. A debt is defined in § 101(12) as a liability on a claim. A claim is defined in § 101(5) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Under § 101(10) a creditor means an entity that has a claim against the Debtor that arose at the time of or before the filing of the bankruptcy petition. Clearly the Debtor's mother has a claim against the Debtor's property and she should have been listed as a creditor in the schedules. *See, In re Wells,* 125 B.R. 297 (Bankr.D.Colo.1991). The court finds this omission was intentional and constituted a false oath.

█ At the hearing on this matter the Debtor testified that various items of furniture in her home were being held for family members. Question 6 of the statement of affairs requests "What property do you hold for any other person? (Give name and address of each person, and describe the property, or the value thereof, and all writings relating thereto.)" In the schedules filed both on November 14, 1990 and on March 26, 1991 the Debtor responded "None". Either the Debtor's testimony or her statement of affairs constituted a false oath. If a debtor is uncertain as to whether certain property is legally required to be included in the petition, the debtor's duty is to disclose the assets so that the question may be resolved. *Butler v. Ingle (In re Ingle),* 70 B.R. 979, 983 (Bankr.E.D.N.C. 1987).

█ Banc One pointed out that in her schedules, depositions, testimony at the meeting of creditors and insurance policies the Debtor gave various values for her household furnishings, clothing and other items which she claimed as exempt. However, the value of property as shown on schedules is not so binding that a party may not, by other evidence or testimony, modify such value. *Kaiser v. Prather (In re Kaiser),* 106 B.R. 434 (Bankr.W.D.Pa. 1989). Banc One produced no such documentary evidence or testimony.

The Debtor changed attorneys and sought to explain her actions by testifying that she simply followed the advice of her attorneys. The Debtor is a sophisticated businesswoman. She was a director of Robertson Oil Company for a number of years and served on the board of directors of a major bank. She and her family have been engaged in the oil and gas business for years. The court cannot find her explanation to be credible.

█ Bankruptcy law presupposes that one who seeks its protection will deal honestly and fairly with creditors by furnishing a complete and accurate schedule of assets. *Hudson v. Wylie,* 242 F.2d 435 *cert. denied,* 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957). The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the debtor's hands during the period prior to bankruptcy. *Guardian Industrial Products, Inc. v. Diodati (In re Diodati),* 9 B.R. 804 (Bankr. Mass.1981). A debtor has a paramount duty to consider all questions posed on statement or schedules carefully and see that question is answered completely in all respects. *Friedman v. Sofro (In re Sofro),* 110 B.R. 989 (Bankr.S.D.Fla.1990). Additionally, a debtor has an ongoing obligation to disclose all transfers, attempted transfers, unlisted assets and other relevant information. *Ray v. Graham (In re Graham),* 111 B.R. 801 (Bankr.E.D.Ark. 1990).

█ Banc One asserted that the Debtor failed to keep recorded information from which her financial condition might be ascertained. The only evidence on this point was that a worksheet which she gave to her attorney was lost. The court finds that is not the type of record contemplated by § 727(a)(3). Banc One's complaint on that ground will be denied.

## CONCLUSION

The facts in this case reveal a pattern of the Debtor's attempts to hide assets from

her creditors. The Debtor filed this case in the wrong division. She did not file a list of creditors when she filed the petition. She did not list all of her creditors on the matrix. She did not timely file her schedules so that the creditors and the Trustee might review them prior to the meeting of creditors. She swore that the schedules presented at the meeting were a complete list of her assets and liabilities, but questioning at the meeting revealed a number of omissions. Instead of filing those schedules, as promised, her attorney substantially amended them and filed the amendments without the Debtor bothering to read or sign the amendments. A person with the business experience of this Debtor clearly knew the importance of documents filed under penalty of perjury. The court concludes that her failure to read and sign those schedules was a deliberate attempt by the Debtor to avoid liability for the statements they contained.

The Debtor's approach was to reveal only what she wished to reveal. If questioned, she would reluctantly reveal additional matters. She testified for her own benefit at the moment as evidenced by her testimony at the meeting of creditors, the testimony on several occasions as to different values for the exempt personal property, and the 11th hour attempt to say that some of the personal property in her home belonged to other parties—in spite of contrary representations in the statements filed that very day.

Fraudulent intent may be inferred by circumstantial evidence or drawn from a debtor's course of conduct. It must be proved by a preponderance of the evidence to be actual intent. *In re Weber*, 99 B.R. 1001 (Bankr.D.Utah 1989). Taken individually, the Debtor's acts might be excusable. Taken collectively, the court finds that the Debtor's course of conduct showed a pattern of intentional deceit. The court finds that the Debtor knowingly and fraudulently made false oaths in connection with this case and that the Debtor intentionally omitted listing assets which should have been disclosed to creditors. Her discharge should be denied.

ORDER ACCORDINGLY.[6]

---

**6.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.