**In re Thomas and Tina MATTHEWS, Debtors.**

**In re B & C OFFICE MACHINES, INC., Debtors.**

**Bankruptcy Nos. 91–30786– LMC, 91–30787–LMC.**

United States Bankruptcy Court, W.D. Texas, El Paso Division.

April 12, 1993.

### ORDER GRANTING, IN PART, AND DENYING, IN PART MOTION FOR RECONSIDERATION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motions of Sidney J. Diamond, P.C. (the "Movant"), former counsel to Thomas and Tina Matthews and B & C Office Machines, Inc. (collectively, the "Debtors"), for reconsideration of the Court's prior opinion styled, Opinion on the First and Final Applications and Requests For Payment of Attorneys' Fees and Expenses, which reduced the Movant's fees in the above-styled cases (collectively, the "Fee Order"). As the Fee Order disposed of the Movant's fee applications in both of the above-styled cases, the court heard the Motions for Reconsidera-

tion simultaneously. For the reasons stated herein, the court grants, in part, and denies, in part the Motions.

## INTRODUCTION

The Movant asserts various arguments for reconsideration of the Fee Order. After consideration, the court deems it appropriate to address only the following issues:

1. Are the factors enumerated in *Matter of First Colonial Corp of America,* 544 F.2d 1291 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), the proper standard for the court to use in determining the reasonableness of pre-petition fees and expenses?

2. Are pre-petition and post-petition attorneys' fees and expenses of a Chapter 11 estate subordinated to the administrative claims of a Chapter 7 estate upon conversion of the case from Chapter 11 to Chapter 7 pursuant to 11 U.S.C. § 726(b) when the pre-petition fees and the post-petition fees are secured by a pre-petition retainer in the possession of the attorney?

3. What is the proper course of action for a debtor's attorney to undertake when the debtor is supplying the attorney with conflicting information of a dubious nature to complete the debtors Schedules and Statement of Financial Affairs which must accompany the petition?

## ANALYSIS

*1. The Court may Look to the First Colonial Factors to Determine the Reasonableness of Pre–Petition Attorneys' Fees and Expenses*

The court, in the Fee Order, examined the reasonableness of the Movant's fees and expenses in light of the factors set forth in *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1298–99 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).[1] The Movant argues

---

1. The *First Colonial* factors were first set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (1974). The twelve factors established in *Johnson* include the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the service properly; the preclusion of other employment by acceptance of the case; the customary fee; whether the fee is fixed or contingent; the time limitations imposed; the amount involved and the results obtained; the experience, reputation and ability of the attorneys; the nature and length

that the *First Colonial* factors are an inappropriate measurement of reasonable pre-petition fees and expenses. This court concurs in a general dissatisfaction with the *First Colonial* factors in the context of post-petition fees, but concludes that the standards *are* both adequate and appropriate in the pre-petition context.

■ An attorney may be compensated for the reasonable value of pre-petition services rendered in contemplation or connection with the case. *See* 11 U.S.C. § 329(a); In re *S.T.N. Enterprises, Inc.*, 70 B.R. 823, 840 (Bankr.D.Vt.1987).[2] The "reasonableness" standard is used to evaluate pre-petition services as, prior to bankruptcy, the attorney is engaged to represent the interest of the debtor, as opposed to the broader interests of the bankruptcy estate. *In re Office Products of America*, 136 B.R. 964, 971 (Bankr.W.D.Tex.1992). The attorney prior to bankruptcy owes an unadulterated duty of zealous representation to the client, and the attorney should not be penalized for simply doing his or her job. *Id.* By the same token, however, in view of the bankruptcy that ultimately resulted, creditors of the estate have an interest in being protected from overreaching on the part of pre-bankruptcy counsel, as every dollar spent on pre-petition attorneys' services is a dollar not available to the bankruptcy estate for distribution to creditors. Section 329(a) permits the court to evaluate prepetition fees, to assure that the pre-bankruptcy client has been charged a reasonable fee, no more and no less than an attorney would have charged a non-bankruptcy client. 11 U.S.C. § 329(a).

The Movant here sought a considerable sum as compensation for pre-petition services rendered in contemplation of, or in connection with, the Debtor's bankruptcy case. In reviewing the Movant's pre-petition services in this case, the court looked to the guidelines established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d

714 (5th Cir.1974), as applied to bankruptcy matters in *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1298–99 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The court was justified in using this standard, as it is the selfsame standard to which all fees charged by this attorney to all of his clients are subject—because the State Bar of Texas prohibits an attorney from charging anything other than a reasonable fee, and the state bar's rules for measuring what is a reasonable fee are virtually identical to the *First Colonial* factors. *See* In re *Temple Retirement Community, Inc.*, 97 B.R. 333, 338 (Bankr.W.D.Tex.1989) (citing to State Bar Rules then in effect); In re *Office Products of Am., Inc.*, 136 B.R. 964, 972 (Bankr.W.D.Tex.1992); *see also* Rule 1.04, Texas Disciplinary Rules of Professional Conduct, 3 GOV'T CODE, art. 10, § 9 (Vernon Supp.1993) (substantially restating the requirements for reasonableness previously found in former Disciplinary Rule 2–106).

Under the *First Colonial* standards, the court determined that some of the fees and expenses incurred were reasonable, and thus allowable, while others were unreasonable and so were disallowed. The court is satisfied with both the approach it took and the results it reached, and finds no reason to alter its ruling.

*2. To the Extent Secured by the Retainer, the Movant's Allowed Fees and Expenses are Not Subordinated to the Chapter 7 Expenses*

Movant next points out that his firm was retained by the Debtors to file a Chapter 11 petition. The case was eventually converted to Chapter 7. Movant had received from the Debtor pre-petition retainers (collectively, the "Retainers"). In the *Matthews* case, the Movant received a $7,500.00 retainer, and in the *B & C Machines* case, the Movant received a

---

of the professional relationship between the attorney and the client; the undesirability of the case; and awards in similar cases.

**2.** An attorney representing the debtor must file a disclosure of compensation paid or agreed to

be paid for services rendered within one year prior to filing the petition in contemplation of or in connection with the bankruptcy case. *See* 11 U.S.C. § 329(a).

$5,000.00 retainer. In the Fee Order, the court ordered Movant to return those portions of the Retainers in excess of the pre-petition fees and expenses awarded and allowed. The Movant here argues that, essentially, the court's order amounts to a subordination of *post*-petition fees and expenses awarded the Movant to the Chapter 7 administrative claims, even though the Movant has a perfected security interest in the Retainers.

The court agrees with Movant that the post-petition fees and expenses awarded to the Movant are secured to the extent covered by the Retainers, and the Movants need not return that portion of the Retainers.[3] Attorneys who hold in their possession monies given to them by clients as retainers for the payment of the attorneys' services do, in fact, have perfected security interests in those monies to the extent that the retainer covers the fees for the services performed. *See* TEX.BUS. & COMM.CODE § 9.305 (possession by secured party perfects security interest without filing); *In re Kinderhaus Corp.*, 58 B.R. 94, 97 (Bankr. D.Minn.1986). "The general rule, in Texas and elsewhere, is that a retainer is held in trust, as property of the client, until applied to the bill of the client." *See In re Office Products of America*, 136 B.R. 964, 969 (Bankr.W.D.Tex.1992) (citations omitted). The right of the attorney to keep the retainer ultimately turns on the filing and approval of a fee application. *See In re Burnside Steel Foundary Co.*, 90 B.R. 942, 944 (Bankr.N.D.Ill.1988).

An attorney's fees are secured by a retainer to the extent the retainer covers the fees and expenses allowed by the court, including post-petition fees and expenses after the conversion of a case to Chapter 7. "Assuming [an attorney] is a secured creditor by virtue of this retainer, the collateral will secure whatever is owed to the firm. However, it is up to this court to determine what is owed to the [attorney] ... This determination of course extends to services rendered post-petition, by virtue of § 330. It also reaches pre-petition services as

well." *See Office Products*, 136 B.R. at 978. When the court awards interim or final compensation to an attorney, the initial source of the payment should be the retainer. *See Kinderhaus*, 58 B.R. at 97.

Administrative claims are provided for under section 503. When a claim is determined to be an "administrative" claim, that claim receives priority in distribution of the estate. *See* 11 U.S.C. § 507(a). In other words, that claim, and the other administrative claims in its class, get paid ahead of unsecured claims. In a straightforward Chapter 11 case, the compensation claims of the attorney to the debtor in possession are generally granted administrative priority. *See* 11 U.S.C. § 503(b)(2). The problem for counsel to a debtor-in-possession occurs if the case fails and is converted to Chapter 7. When that happens, the administrative expenses of the Chapter 11 estate, including the attorneys' fees and expenses, are subordinated to the administrative expenses of the Chapter 7 estate (sometimes referred to as the "burial expenses"). 11 U.S.C. § 726(b). In essence, the administrative claims of the Chapter 7 estate now have priority over the administrative claims of the Chapter 11 estate. *Id.*

Movant argues that this § 726(b) subordination should not apply to its Chapter 11 administrative claim, because its fees were secured by the Retainers. The argument requires us to look a bit more closely at retainers, and the role they play in the bankruptcy distributive scheme.

■ Retainers, although still in the possession of the attorney, remain property of the estate. *See In re Burnside Steel Foundary Co.*, 90 B.R. 942, 944 (Bankr. N.D.Ill.1988). Both section 329 and Bankruptcy Rule 2017 empower the court to review any pre-petition transfer (including the transfer of a retainer) and set aside that transfer, if appropriate, if it was made in connection with or in contemplation of filing the bankruptcy petition. *See In re Office Products of America, Inc.* 136 B.R.

---

**3.** However, the retainers cannot stand as security for fees not allowed by this court, any more than a creditor would be allowed to foreclose on collateral even though no debt were owed. Any retainer in excess of allowed fees must be returned, for fees not allowed are fees not owed.

964, 970 (Bankr.W.D.Tex.1992). The court may also cancel any agreement made between the debtor and the debtors's attorney for services to be rendered in the bankruptcy. *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 574 (Bankr.N.D.Texas 1986).

Retainers accepted by attorneys representing Chapter 11 debtors are usually intended to protect an attorneys fees and expenses incurred in the Chapter 11 case from subordination in the event the case is converted to Chapter 7.

> [T]he typical retainer paid to a debtor's attorney in a Chapter 11 case is intended to secure future payment of attorney's fees awarded by the Court. In the event that the Court orders such an award, and the debtor does not have the cash to pay the award, the retainer insures payment. If the case fails and is converted to Chapter 7, *the retainer enables the debtor's attorney to avoid the subordination of the Chapter 11 expenses of administration to those incurred in administering the Chapter 7 estate mandated by § 726(b) of the Bankruptcy Code.*

*See Matter of K & R Mining, Inc.*, 105 B.R. 394, 397 (Bankr.N.D.Ohio 1989) (quoting *In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr.N.D.Ill.1988)); *but see In re Rittenhouse*, 76 B.R. 610, 611 (Bankr. S.D.Ohio 1987) (Chapter 11 fees and expenses secured by retainer are subordinated to Chapter 7 expenses). Section 726(b) "only affects distribution priorities among holders of unsecured claims, and an attorney with a retainer is, to the extent of the retainer, the holder of a secured claim." *K & R Mining*, 105 B.R. at 397. Any remaining amount of the retainer, after the payment of fees, is of course subject to being returned to the source from which the funds are derived, for even in the hands of the attorney, the retainer is still, in the first instance, property of the estate. *See Kinderhaus*, 58 B.R. at 97. On the other hand, if fees and expenses awarded by the court exceed the amount of the retainer, those fees are "unsecured," and are subor-

dinated to the Chapter 7 administrative claims. *See* 11 U.S.C. § 726(b); *In re Viscount Furniture Corp.*, 133 B.R. 360, 367–68 (Bankr.N.D.Miss.1991).

■ Movant here is a secured creditor to the extent of the Retainers, and is entitled to keep and apply the Retainers against its allowed fees and expenses, both pre-petition and post-petition. Fees and expenses which exceed the amount of the Retainers, however, are unsecured administrative expenses of the Chapter 11 estate and are properly subordinated to Chapter 7 administrative expenses. The Fee Order is modified accordingly.

*3. When an Attorney Questions the Accuracy of the Information Supplied by the Debtor, the Attorney has Recourse Other Than Multiple and Continual Redrafts of the Same Documents*

In the Fee Order, the court disallowed several hours, both pre-petition and post-petition, due to the excessive and unreasonable amount of time spent on the Debtor's Schedule of Assets and Statement of Financial Affairs (the "Statement and Schedules" or the "Documents"). The Movant spent 18.3 hours on pre-petition counseling and preparation for filing the Chapter 11 petition in the *B & C Office Machines* case. Approximately seventy-five percent of that time was spent on gathering information for and preparing the required documents. Despite these efforts, the Movant managed to file only the petition, and not the Schedule of Assets or the Statement of Financial Affairs.[4] The case was ultimately converted to Chapter 7, in part, because of the very failure to file the required documents.

Similarly, in the *Matthews* case, the Movant spent 22.5 hours pre-petition on similar tasks, of which 14.1 hours were devoted to gathering needed information for the preparation of the required documents. Again, only the petition, and not the other Documents, were filed, despite two extensions

---

**4.** After filing the petition, the Movant was granted two (2) extensions of time to file these documents. Several additional post-petition hours were spent on the preparation of these documents, but to no avail.

of time and many post-petition hours spent on this task. The court determined that the reasonable value of the Movant's pre-petition services in *B & C Office Machines* was $2,500.00 and in *Matthews* was $2,000.00. In regard to post-petition services, the court determined that $6,000.00 was reasonable in the *B & C Office Products* case and that $3,425.00 was appropriate compensation in the *Matthews* case.

The Movant argues that there were "extenuating circumstances" in these cases which resulted in the inordinate amount of hours invested in the preparation of the Debtor's Statement and Schedule, and which also precluded Movant from completing and filing these Documents. In its pleadings for reconsideration, Movant alleges that the Debtors provided the Movant with false information. Furthermore, the Movant alleged that the Debtors were intentionally misleading the Movant and were endeavoring to commit perjury.[5] Movant stated that his adherence to the Texas Disciplinary Rules of Professional Conduct required him to continually investigate the information supplied by the Debtors, and not to knowingly file false statements with the court. Furthermore, the Movant recounted that the more he investigated, the more incorrect information he uncovered. Nearly every time the Movant discovered discrepancies in the information supplied by the Debtors, the Movant saw fit to redraft and rerun the Statement and Schedules. The end result was that, in both cases, excessive hours were logged and fees incurred for documents that were never filed by the Movant. Movant contends he should not be penalized for adhering to the rules of professional conduct, and that his efforts were expended primarily for the benefit of the creditors, who justifiably should pay for that effort.

■ The Bankruptcy Code and the Bankruptcy Rules impose several obligations upon a debtor. In return for the protections afforded by the bankruptcy laws, "both law and equity require that the Debtor-in-Possession voluntarily and willingly disclose, in minute detail, his financial affairs." *See In re Baumgartner*, 57 B.R. 513, 516 (Bankr.N.D.Ohio 1986). To that end, Bankruptcy Code Section 521 and Rule 1007 require a debtor to file a petition containing the names and addresses of its creditors,[6] a schedule of assets and liabilities, and schedule of current income and expenditures, and a statement of financial affairs.[7] The duty to complete these documents fully and accurately falls squarely upon the shoulders of the debtor. *See In re Braymer*, 126 B.R. 499, 502 (Bankr. N.D.Tex.1991). Furthermore, the debtor must use reasonable diligence to complete them. *Id.* Failure of a debtor to perform this duty may result in the dismissal of the case or a denial of discharge. *See, e.g., In re Braymer*, 126 B.R. 499, 503 (Bankr. N.D.Tex.1991) (denial of discharge); *Baumgartner*, 57 B.R. at 516 (dismissal). These duties are imposed on all debtors, *qua* debtors, regardless what chapter they file under.

But the attorney in a Chapter 11 case is representing both the debtor and the debtor-in-possession. The attorney represents the debtor when he or she assists the debtor in discharging the duties imposed under section 521, which include the duty to prepare accurate and complete schedules. But the attorney is also in some sense "working" for the creditors post-petition, because the attorney is representing the debtor-in-possession, fiduciary of the estate. Should the creditors be expected to pay for the due diligence investigations of debtor's counsel, or for frequent re-drafts of the Debtor's schedules? Should creditors be expected to pay more for an incompetent or deceptive debtor than for a competent and forthright debtor? Should counsel be penalized for discharging its due diligence obligations

---

5. Interestingly, at hearing the Movant stated merely that the Debtors simply misunderstood the requests for information.

6. Local Rule 1007(a)(6) obligates not only the debtor, but also the debtor's attorney, to prepare the master mailing list. The Debtor, however, must sign and verify the list, attesting to its accuracy and completeness.

7. Rule 1007(d) also requires the Debtor to file a list of its 20 largest unsecured creditors.

(presumably imposed by virtue of counsel's position as attorney for the debtor-in-possession)?

In the broadest sense, the efforts of the debtor and debtor's counsel in preparing the Schedules and Statement of affairs are expended for the benefit of the estate's creditors. The Statement and the Schedules inform them not only of the bankruptcy proceedings, but also serve as an informational starting point for any cause of action a creditor may have against the bankruptcy estate.

> Actual knowledge of the proceedings, contemplated by the section, is a knowledge in time to avail a creditor of the benefits of the law,—in time to give him an equal opportunity with other creditors,—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends. The provisions of the law relied on by plaintiff in error are for the benefit of creditors, not the debtor. That the law should give a creditor remedies against the estate of a bankrupt, notwithstanding the neglect or default of the bankrupt, is natural. The law would be, indeed, defective without them. It would also be defective if it permitted the bankrupt to experiment with it,—to so manage and use its provisions as to conceal his estate, deceive or keep his creditors in ignorance of his proceeding, without penalty to him.

*Birkett v. Columbia Bank*, 195 U.S. 345, 350, 25 S.Ct. 38, 40, 49 L.Ed. 231 (1904). The provision for complete and accurate schedules prevents the rights of creditors from being compromised. *Reyes v. Vantage Steamship Co., Inc.*, 672 F.2d 556, 558 (5th Cir.1982); *Moureau v. Leaseamatic, Inc.*, 542 F.2d 251, 252 (5th Cir.1976). The time reasonably spent rendering legal assistance to the debtor, so that the debtor can fulfill its duty to its creditors by completing accurate and complete schedules, is, for this reason, compensable out of the estate. 11 U.S.C. §§ 521, 330(a).

The services of counsel in assisting with the preparation of the Schedules and Statement of Affairs are, however, primarily services to the *debtor*, rather than to the debtor in possession, for it is the debtor who has the duty to prepare and file schedules. 11 U.S.C. § 521. The debtor in possession, as "trustee" of the estate, may well rely on and work with the schedules, but it is not this "trustee" who is responsible for reporting what assets and what liabilities the debtor had on the date of filing. Thus, when we evaluate these services, we do so in precisely the same way we would were this case to have been filed under chapter 7, for it is the fairly narrow duties associated with representing a debtor in a chapter 7 bankruptcy that embrace the preparation of the debtor's Schedules and Statement of Affairs. *See Office Products of America*, 136 B.R. at 971. That counsel is also counsel to the debtor in possession must be treated as largely irrelevant when it comes to evaluating fees for preparing schedules, as this is not the capacity in which the attorney can be said to be operating.[8]

■ In the case at bar, the Movant spent many, many hours investigating, drafting and redrafting the Statement and Schedules. The Movant has offered conflicting reasons for why all this was necessary. In the Movant's pleadings, the Movant said that the Debtors intentionally misled the Movant when supplying the information for the Documents. At the hearing, the Movant indicated that the Debtors were merely confused and did not understand the Movants requests for information. The Movant explained that, in his view, he was prohibited by the Texas State Bar Disciplin-

---

**8.** It is critically important to appreciate this distinction. Even though, as a general principle, the time spent assisting the debtor in preparing schedules is compensable as a "benefit to creditors," *see Birkett v. Columbia Bank, supra*, it is not correct to say that counsel is working "for" the creditors. The debtor has a duty to be honest and candid with his or her creditors, that is true, and that is part of the price the debtor agrees to pay in exchange for the free injunction and fresh start that bankruptcy delivers. But assisting the debtor in discharging that duty is not the same as working for the creditors, or even for the estate.

ary Rules of Professional Conduct[9] from filing with the court documents he knew to be wrong.[10] So as not to violate the rules of professional responsibility, the Movant says that he was constrained to refine and redraft the Documents, again and again.

 While the Movant's strict adherence to the Disciplinary Rules cannot be faulted, the attorney was not without other options, options less expensive to the estate than the one selected. A debtor's attorney of course has a duty to make reasonable inquiry into the accuracy of the Debtor's petition before the Debtor signs the petition, statements and schedules. *In re Huerta*, 137 B.R. 356, 378 n. 8 (Bankr. C.D.Cal.1992). The attorney, as an officer of the court, owes a duty of integrity to the court system. *Id.* But the attorney can fulfill these duties by following these guidelines:

1. Explain the requirement of full, complete, accurate and honest disclosure of all information required of the Debtor;

2. Ask probing and pertinent questions designed to elicit full, complete, accurate and honest disclosure from the Debtor;

3. Check the Debtor's responses in their petition, statements and schedules to be sure they are internally and externally consistent;

4. Demand of the client full, complete, accurate and honest disclosure of all information required by the debtor prior to the attorney's signature being placed upon the document;

5. *Seek relief from the court of the client representation in the event that the attorney learns that he or she has been misled by the client.*

*Id.* Guideline number five (5) is especially relevant in the case at bar. Here, instead of seeking guidance from the court, or seeking early to withdraw from representation, the Movant engaged in a seemingly unending series of drafting and redrafting of the Documents. Each time the Movant drafted a new set of Documents, the Movant did so with the knowledge that the last ones were inaccurate, as well as the ones before those. By failing to promptly withdraw, Movant's efforts actually *contributed* to the dishonesty being perpetrated by the debtors on the estate by helping (inadvertently or not) to keep it under cover. Had Movant sought immediately to withdraw, he would not only have minimized his fees (to the benefit of both the creditors and his own law firm) but would also have sent up an early alarm that something was amiss. The attorney does *not* have an obligation to *be* the debtor, after all, and if the debtor is not readily cooperative in fulfilling its duties under section 521, the debtor's attorney certainly has no duty to step in and assume those duties. If the attorney has followed the first four guidelines outlined above and the debtor still refuses, for whatever reason, to cooperate, the attorney is only making matters worse by not seeking to withdraw. "A diligent and thorough effort to assist the debtor in assembling, presenting, and fulfilling required data is part of counsel's job. However, *expending large sums of money to test and re-test the accuracy and completeness of the information furnished by the client is a waste.* A debtor is obligated

---

**9.** The Texas State Bar Rules (the "Disciplinary Rules") governing the conduct of attorneys are codified at 3 GOV'T CODE, art. 10, § 9 (Vernon Supp.1993). The Movant referred to the following Disciplinary Rules to guide his conduct:

A lawyer shall not assist or counsel a client to engage in conduct that the lawyer knows is criminal or fraudulent. *Disciplinary Rule 1.02(c).*

When a lawyer has confidential information clearly establishing that a client is likely to commit a criminal or fraudulent act that is likely to result in substantial injury to the financial interests or property of another, the lawyer shall promptly make reasonable ef-

forts under the circumstances to dissuade the client from committing the crime or fraud. *Disciplinary Rule 1.02(d).*

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third party; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client. *Disciplinary Rule 4.01.*

**10.** Bankruptcy petitions and schedules are filed under penalty of perjury.

to disclose comprehensively his assets. Other parties [such as the creditors in a chapter 11 case] may employ a coercive process to require it." *In re Saturley*, 131 B.R. 509, 519 (Bankr.D.Mass.1991).

The *Saturley* court echoed that a debtor's attorney, who believes that his client/debtor has been less than candid in detailing its documents, has a number of less costly alternatives than the Movant at bar chose. For example, if the case has yet to be filed, the attorney could terminate the relationship. *Id.; see also* Disciplinary Rule 1.15(b)(2), (3). If the case has been filed, the attorney could alert the U.S. Trustee, the court, or another interested party that, despite the attorney's best efforts, the schedules are incomplete or inaccurate. *Saturley*, 131 B.R. at 519. Furthermore, the attorney may request permission from the court to withdraw. *Id.; see also* Disciplinary Rule 1.15(b)(2), (3). In the worst case, when the attorney is convinced a fraud has occurred, he or she had best follow the appropriate provisions of the applicable code of conduct. *Id.; see, e.g.,* Disciplinary Rule 1.02(e) (attempt to dissuade client from committing fraud or crime). Any of these options would have been less expensive and more effective than the path chosen by the Movant.

■ This is not to say that redrafts of documents are always improper and noncompensable; certainly, redrafts of documents can be both necessary and beneficial. *In re Air Vermont*, 114 B.R. 48, 53 (Bankr.D.Vt.1988). However, all professionals compensated by the estate have an affirmative duty to control administrative expenses. *In re NRG Resources, Inc.*, 64 B.R. 643, 651 (W.D.La.1986). It is important to consider the possible success, or lack thereof, of a particular task before undertaking it. *Id.* Where it appears that an effort will meet with little success, the effort should not be undertaken. *See, e.g., In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 880 (Bankr.W.D.Pa.1986) (excessive time spent on drafting nonconfirmable plan and amended plan noncompensable by court).

The efforts here were, unfortunately, a waste of the creditors' time and money. The Movant knew that the Debtor consistently provided him with inaccurate information, and should have at the least employed a cost/benefit approach. *Matter of Hutter Construction Co., Inc.*, 126 B.R. 1005, 1013 (Bankr.E.D.Wis.1991) (a Chapter 11 case is not a "cash cow"). As the *Hutter* court stated:

> One of the objectives in a Chapter 11 case is to distribute as much money as quickly as possible.... Attorneys must use discretion as to the extent of the legal services necessary. Cost/benefit analyses must be made at all times.

*Id.* If the Movant had applied a cost/benefit analysis, in light of his continuing suspicions that the Debtor was providing inaccurate information, he would have concluded that the redrafting of the Documents in error with additional erroneous information would clearly cost the estate more than it would benefit.

The court, in its Fee Order, made appropriate adjustments to Movant's fee requests, adjustments consistent with the foregoing case law. The Fee Order adequately provided compensation to the Movant for his services in attempting to draft the Debtor's Schedule of Assets and Statement of Financial Affairs. It need not be further revised.

## CONCLUSION

For the reasons set forth herein, the court hereby grants, in part, and denies, in part the Movant's Motion for Reconsideration.

So **ORDERED.**