In re Edwin Max SERAFINI a/k/a E. Max Serafini d/b/a Cottonwood Farms and Doris Ann Serafini, Debtors.

The FIRST NATIONAL BANK OF GORDON, Plaintiff–Appellant,

v.

Edwin Max SERAFINI a/k/a E. Max Serafini d/b/a Cottonwood Farms and Doris Ann Serafini, Defendants–Appellees.

Bankruptcy No. 87 B 6701 J.

No. 88–K–1890.

Adv. No. 87 M 809.

United States District Court, D. Colorado.

April 26, 1990.

Michael J. Cook, Russell O. Stewart, Faegre & Benson, Denver, Colo., for plaintiff-appellant.

Richard L. Harring, Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for defendants-appellees.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The First National Bank of Gordon appeals the bankruptcy court's ruling dismissing its complaint against the debtors, Edwin and Doris Serafini, pursuant to Fed. R.Civ.P. 41(b), made applicable to bankruptcy proceedings through Bankr.R. 7041. The Bank alleged that the Serafinis should be denied a discharge in bankruptcy under § 727(a)(2)(A), § 727(a)(2)(B) and § 727(a)(4) of the Code, or alternatively, that the Serafini's debt to the Bank should be declared nondischargeable under § 523(a)(2)(B) of the Code. After the Bank had presented its case, counsel for the debtors moved for involuntary dismissal of the complaint. The bankruptcy court granted the motion, concluding that the Bank had not presented clear and convincing evidence to sustain its case. It then affirmed that ruling in a detailed written opinion on the Bank's motion to amend. The Bank now appeals the court's ruling on its claims under §§ 727(a)(2)(A) and 727(a)(2)(B) of the Code. (It does not appeal the dismissal of its § 727(a)(4)(A) or § 523 claims).

The Bank's arguments fall into two categories. First, with respect to its claims under § 727(a)(2)(A) for concealment of property of the debtor within one year be-

fore filing, the Bank argues that the bankruptcy court erroneously ruled that Mr. Serafini's intent in creating a spendthrift trust more than one year before the bankruptcy filing was irrelevant. It further alleges that there was sufficient evidence that the Serafinis retained the benefits of the trust assets after declaring bankruptcy, thereby continuing their concealment of assets in the year before filing. Second, the Bank argues that the bankruptcy court never entered a ruling on its claim under § 727(a)(2)(B) for concealment of assets of the estate after the filing of the petition, and that there was sufficient evidence to support this claim. I have read the entire transcript of the proceedings in the bankruptcy court and the court's memorandum opinion on the motion to amend. I find the Bank's arguments are without merit and affirm the bankruptcy court's ruling.

## I. *Facts.*

Mr. and Mrs. Serafini operated Cottonwood Farms, a Colorado partnership engaged in farming. Mr. Serafini also worked in real estate development and in the engineering field. The Serafinis additionally owned interests in oil and gas producing properties. In 1980, to fund some of Cottonwood Farms' operations, Mr. Serafini obtained a short term loan from the Bank. Over the next several years, the principal amount of the loan was increased to over $250,000.

On July 1, 1985, after consulting with his attorney about estate planning, Mr. Serafini created the E. Max Serafini Irrevocable Trust. Mr. Serafini testified that the Trust was intended to provide income to Mrs. Serafini over the course of her life. Upon her death, the assets were to be distributed to the couple's children. Mr. Serafini conveyed several assets into the Trust, including a condominium in Mexico, several promissory notes, and certain oil and gas properties. (The Bank disputes the effectiveness of these transfers.) The Trust also included a spendthrift clause. The trustees of the Trust were the Serafinis'

two sons, and Mrs. Serafini kept the books of the Trust.

After Mr. Serafini defaulted on his loans, the Bank instituted proceedings to recover on the notes and to have Mr. Serafini's conveyances of assets to the Trust declared fraudulent under state law. The Bank obtained judgment on the promissory note on January 26, 1987. On June 8, 1987, the Serafinis filed a voluntary petition for bankruptcy under Chapter 7 of the Code, thereby staying the fraudulent conveyance action. Mrs. Serafini listed her interest in the Trust in her schedule of assets.

On October 13, 1987, the Bank filed the instant complaint objecting to the Serafinis' general discharge under § 727 of the Bankruptcy Code and to the discharge of their individual debt to the Bank under § 523 of the Code. Trial on the Bank's claims was held on February 9 and 10, 1988. As outlined above, the court granted judgment on all claims for the Serafinis, reaffirming that ruling on October 17, 1988.

During the pendency of the Bank's action against the Serafinis, the trustee of the bankruptcy estate commenced a fraudulent conveyance action against the Serafinis, presumably under § 544(b) of the Code.[1] In that proceeding, the trustee sought to recover the assets that Mr. Serafini conveyed to the Trust. Trial on this claim was conducted on November 15 and 18, 1988. On January 4, 1989, the bankruptcy court entered its memorandum opinion declaring the Trust void under Colorado law and directing the Serafinis to turn over Trust assets to the estate.

## II. *Issues.*

A. *Dismissal of Claim Under § 727(a)(2)(A) for Continuing Concealment of Assets.*

Section 727(a)(2)(A) of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

---

1. The record is not clear on the relationship between the Bank's original fraudulent conveyance action which was stayed by the Serafinis' filing for bankruptcy and this action by the bankruptcy trustee.

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, *within one year before the date of the filing of the petition....*

11 U.S.C. § 727(a)(2)(A) (emphasis added). By its terms, this provision applies to the debtor's deceitful acts occurring only within the year before his filing for bankruptcy. As for any exception to discharge, the party objecting to discharge must establish its claim under § 727 by clear and convincing evidence. Bankr.R. 4005.

In this case, Mr. and Mrs. Serafini filed for bankruptcy on June 8, 1987. Thus, to prevail on its claim under § 727(a)(2)(A), the Bank must prove by clear and convincing evidence that the debtors committed one of the enumerated acts on or before June 8, 1986. The Bank's complaint, however, focuses on the Serafinis' creation of the Trust. It contends that the Serafinis' intent in forming the Trust was to prevent their creditors from gaining access to his assets. It is undisputed that the Trust was created in July 1985; therefore, the Serafinis' actions in this regard are clearly outside the scope of § 727(a)(2)(A).

The Bank argues, however, that the Serafinis' continued retention of assets allegedly conveyed to the Trust and their concealment of this situation brings them within the scope of § 727(a)(2)(A).

Despite [the] seemingly absolute limitation [of § 727(a)(2)(A)] on the timing of the debtor's conduct, existing case law recognizes that a transfer of property, which occurred more than one year prior to the petition, may warrant the denial of a discharge if the transfer is concealed or beneficial interests are retained into the magic one year period.

*Penner v. Penner (In re Penner),* 107 B.R. 171, 173 (Bankr.N.D.Ind.1989). Consequently, to take advantage of the "continuing concealment" doctrine, the Bank had the burden to demonstrate by clear and convincing evidence, "a transfer of title coupled by the retention of the benefits of ownership." *Thibodeaux v. Olivier (In re Olivier),* 819 F.2d 550, 553 (5th Cir.1987).

▪ After reading the record of the proceedings in the bankruptcy court, it is clear that the Bank did not meet its burden to establish a continuing concealment of assets. First, the Bank contends that the court erroneously excluded evidence relating to Mr. Serafini's financial condition and intent in 1985 in creating the Trust. While to some extent, this evidence may have been relevant to establish the predicate fraudulent transfer of assets, it was not probative of the central, dispositive issue in this case: whether the debtors retained the benefits of the assets conveyed to the Trust and concealed this fact within one year before filing for bankruptcy. Moreover, although some evidence of this nature was excluded, the bankruptcy court liberally allowed other, similar evidence which was of questionable relevance. Thus, any error in excluding evidence relating to the original creation of the Trust was harmless.

Second, the Bank argues that, contrary to the bankruptcy court's ruling, there was sufficient evidence of continuing concealment. The Bank's characterization of the strength of the evidence on this score is misleading. For example, the Bank asserts that after the creation of the Trust, "the Debtors used income from the oil and gas properties and the Ahlers' note to pay the mortgage on the family residence and to pay other shared household expenses...." Appellant's Opening Brief at 18. Yet the uncontroverted testimony was that payments on the Ahlers' note were made to Mr. Serafini, who then immediately transferred the funds to the Trust.[2] When the Serafinis were advised that the note should be paid directly to the Trust and not

---

**2.** There was one instance in which the funds were erroneously deposited into Mr. Serafini's personal account. When the error was discovered, Mr. Serafini promptly made payment to the Trust, with interest.

through Mr. Serafini, this situation was corrected. Likewise, there is no evidence in the record to establish that the Serafini's ever received income directly from the oil and gas properties after they were conveyed to the Trust.

The Bank further contends that Mrs. Serafini never properly conveyed her interests in the oil and gas properties to Mr. Serafini to be used as the corpus of the Trust. Again, the Bank produced no evidence whatsoever that the conveyances were not made or were improperly made. Moreover, the testimony indicates that the Serafinis believed that the conveyances were properly effected by their attorneys, and there is simply no indication that they intended to retain individual interests in these properties.

In sum, the bankruptcy court's conclusion that there was insufficient evidence to sustain the Bank's continuing concealment claim is not clearly erroneous. The record reveals that the Bank mistakenly focused on the creation of the Trust in 1985, and not on the Serafinis' activities in the one year period before filing for bankruptcy as required by § 727(a)(2)(A). The Bank presented no documentary evidence that assets were improperly or never conveyed to the Trust. Finally, what little evidence of the Serafinis' post-conveyance use of Trust assets, such as Mr. Serafini's sporadic visits to the Mexican condominium and Mrs. Serafini's occasional application of trust proceeds to pay household expenses, was simply insufficient to carry its burden. I affirm the bankruptcy court's ruling dismissing the Bank's § 727(a)(2)(A) claim.

B. *Dismissal of Claim Under § 727(a)(2)(B) Concealment of Assets Post–Filing.*

The Bank's final argument in this appeal is that the bankruptcy court erred in failing to enter findings of fact on and dismissing its claim under § 727(a)(2)(B). This section prevents discharge of a debtor who conceals assets of the estate after the bankruptcy petition is filed. 11 U.S.C. § 727(a)(2)(B). The Bank's claim under this section focuses on Mrs. Serafini's continued receipt of Trust payments after the

filing of the petition. The Bank also argues that Mr. Serafini violated this section because "Mr. Serafini had, as a matter of law, a 'legal or equitable interest' in the Trust because he was a defendant in [the bankruptcy trustee's fraudulent conveyance action]." Appellant's Opening Brief at 25. Neither argument has merit.

■ First, Mrs. Serafini was entitled to receive Trust payments until the bankruptcy court ordered otherwise. It is undisputed that she accepted no payments when such an order was in effect. Furthermore, § 727(a)(2)(B) requires *concealment* of assets of the estate. Mrs. Serafini did not conceal her receipt of Trust payments and listed her interest in the Trust as an asset on her schedules.

■ With respect to Mr. Serafini, the Bank attempts to bootstrap a violation of § 727(a)(2)(B) by contending that, by being named as a defendant in the bankruptcy trustee's separate fraudulent conveyance action, Mr. Serafini somehow gained an equitable interest in the Trust which he then concealed from creditors. This argument is specious. The Bank relies on *American National Bank of Austin v. Mortgageamerica Corp. (In re Mortgageamerica Corp.)*, 714 F.2d 1266 (5th Cir. 1983). This case simply holds that a debtor retains an equitable interest in property that he fraudulently transfers and "creditors may attach or execute judgment upon it as though the debtor had never transferred it." *Id.* at 1275. *In re Mortgageamerica Corp.* does not hold that a debtor can be held liable under § 727(a)(2)(B) for failing to disclose such a potential equitable interest. Moreover, it is important to note that judgment finding that the creation of the Trust was a fraudulent conveyance (and thereby creating Mr. Serafini's equitable interest in the property formerly comprising the trust under *Mortgageamerica*) was not entered until several months *after* the bankruptcy court rendered its judgment in this case.

In light of the extremely weak legal basis for the Bank's claim under § 727(a)(2)(B), the bankruptcy court's failure to make a specific ruling on the matter

was inconsequential. It is clear that the court dismissed all of the Bank's claims because there was insufficient evidence to support them. I affirm the bankruptcy court's judgment dismissing the Bank's § 727(a)(2)(B) claim.