In re Theodore ESSRES and Margaret Essres, Debtors.

Sam NEWTON, Appellee/Plaintiff,

v.

Theodore ESSRES,
Appellant/Defendant.

No. 91–K–47.
Bankruptcy No. 89 B 15512 A.
Adv. No. 90 D 0309.

United States District Court,
D. Colorado.

May 1, 1992.

Daniel T. Moyle, Jr., Wheat Ridge, Colo., for appellee/plaintiff.

J. Matthew DePetro, Miller & Leher, Littleton, Colo., for appellant/defendant.

## MEMORANDUM DECISION
## ON APPEAL

KANE, Senior District Judge.

This matter is before the court on cross-appeals from the bankruptcy court. 122 B.R. 422. After a trial on October 23, 1990, the debtors' discharge was denied because they had fraudulently concealed and transferred several horses and other personal property while retaining the use and benefit of them. In so finding, the bankruptcy court applied the doctrine of continuing concealment to bring the transfers within the one year period of 11 U.S.C. § 727(a)(2)(A).

On appeal, the debtors claim 1) that the trial court applied an improper burden of proof to the proceedings; 2) that there is no authority for use of the doctrine of continuing concealment; and 3) that there was insufficient evidence to support application of the doctrine of continuing concealment. On cross-appeal the creditor claims that the bankruptcy court wrongly dismissed its claim for relief under 11 U.S.C. § 727(a)(4)(A). The creditor claims there was ample and sufficient evidence to support a finding that the debtors omitted several items from their bankruptcy schedules with the intent to hinder, delay or defraud their creditors.

In this decision I: 1) apply the preponderance of the evidence standard in a § 727(a)(2)(A) action [1]; 2) reaffirm the vitality of the continuing concealment doctrine; and 3) find that the trial court properly applied the doctrine to the facts.

---

1. Since this case was ripe for decision, the circuit has reversed one of my opinions, *In re Serafini*, 938 F.2d 1156 (10th Cir.1991). *reversing* 113 B.R. 692 (D.Colo.1990). There, it held that the proper standard of proof in a § 727(a)(4)(A) proceeding is proof by a preponderance of the evidence rather than clear and convincing evidence.

The creditor's cross-appeal is a closer issue. The lower court ruled that the debtors' omissions were not done deliberately or with reckless indifference, thus finding an absence of fraudulent intent on the part of the debtors. Under most circumstances, in deference to the trial court's fact finding function I would affirm the dismissal of the claim. As noted below, however, the court used the evidence introduced under § 727(a)(4)(A) as proof of the debtors' fraudulent intent under § 727(a)(2)(A). Furthermore, the trial court's written findings recognize an error or at least ambiguity in its dismissal of the § 727(a)(4)(A) claim. In the face of these apparent inconsistencies, I remand the dismissal of the § 727(a)(4)(A) claim so that the bankruptcy court can clarify its order.

## I. *Facts*

### A. The § 727(a)(2)(A) Claim

Theodore and Margaret Essres ("debtors") filed a chapter 7 petition on November 15, 1989. In a statement of affairs, co-debtor Theodore Essres listed his ownership interest in C. G. & E. Associates, a partnership, and Essres Realty and Insurance, Inc., a closely held real estate brokerage corporation. He owned 50% of the corporate stock and his sister owned the remainder. In their statement of financial affairs debtors listed a transfer of personal property to their two children for $800.00 in March, 1989. The property included two John Deere tractors, four tractor implements, two snowmobiles and a trailer, a bass fishing boat and trailer, a 24 foot flatbed trailer, and one snow blower. In an earlier personal financial statement of June 14, 1987, Mr. Essres had valued this property at $52,000.00. After the initial § 341 meeting, the debtors amended their schedules to reflect that the transfer to the children happened on March 15, *1988*. At trial, the debtors offered a bill of sale dated March 15, 1988 as evidence of the sale. The creditor offer no contradictory evidence. Mr. Essres also testified that he transferred five horses to his daughter and son pre-petition in 1988, valued at approximately $22,500. Although some of the horses have since been sold, the balance remained stabled on debtors' property, as they were before the disputed transfer.

Mr. Essres's post-transfer behavior was not completely consistent with his purported transfers of the personal property. Mr. Essres admitted on the stand that he transferred the tractors and implements to his children for less than their value and that he would not have sold it to anyone else for $800. In spite of the pre-petition transfer of the horses, Mr. Essres listed them in his schedule of assets as being held for his daughter. The debtors' 1987 tax return claimed 100% of the horse related business expenses as a tax deduction, even though Mr. Essres testified that he owned only a one-half partnership interest in the horses in 1987. He claimed that his daughter owned the other half of the partnership, but this claim is belied by the absence of partnership agreements, documents or tax returns of any sort for the partnership. Finally, debtors' 1988 tax return (filed in February, 1990) claimed a depreciation expense for the horse barn located on their jointly owned 20 acres of property.

At trial, Mr. Essres testified the deduction was related to the operation of the horse business allegedly transferred to his daughter in 1988. He acknowledged that he should not have taken the tax deduction as he no longer had an ownership interest in the horses. The trial court found neither debtor to be credible. In support of its conclusion that the debtors had continued to enjoy the benefits of the allegedly transferred property well after the transfer, the trial court noted the following: 1) the debtors paid the registration fees for the flatbed and bass boat trailers in June, 1989; 2) the debtors deposited an insurance check for damage to the bass boat into their personal checking account in August or September, 1989; 3) the debtors paid for the boat motor inspection in September, 1989; 4) the debtors deposited a check made out to them into their personal checking account for the sale of the snowmobiles in October, 1989; 5) The debtors applied for new titles for the trailers on September, 1989; 6) the debtors paid the registration

fees for the vehicles jointly owned with their children.

The bankruptcy court found that the "transfer of the horses and personal property were sham transactions. In reality, the Debtors maintained control over these assets and retained the benefits of ownership while concealing these assets from creditors. This concealment continued into the year prior to bankruptcy, and the Debtors acted in concert with an intent to hinder, delay or defraud their creditors." *Order of December 13, 1990,* at 427.

### B. The § 727(a)(4)(A) Claim

The debtors failed to list seven bank accounts which they used in the two years before they filed their bankruptcy petition. They failed to list as assets two vehicles which they jointly owned with their children. They failed to provide information concerning the horse partnership in which Theodore Essres was involved with his daughter. Finally, debtors failed to list as an asset a $200,000 shareholder loan Theodore Essres made to his closely held corporation. The trial court dismissed this count at the time of trial in its oral findings and conclusions. Its written findings, however, practically invite reversal. "Although the Court has previously ruled that Plaintiff failed to prove that the Debtors made a false oath in preparing their bankruptcy schedules, this does not preclude the Court from noting the many contradictions, omissions and discrepancies in the Debtors' Schedules. There are so many that the Court may have been too hasty in dismissing the § 727(a)(4)(A) claim." *Order of December 13, 1990,* at 427.

### II. *Standard of Review*

■ The standard of review in an appeal from the bankruptcy court is not disputed. The trial court's findings of fact are binding unless clearly erroneous, giving due deference to the trial judge's opportunity to assess the credibility of the witnesses. Bankr.R. 8013. Review of the bankruptcy court's legal conclusions, however, is made on a de novo basis. *In re Mullet,* 817 F.2d 677 (10th Cir.1987).

### III. *Discussion of the Appeal*

#### A. Burden of Proof

■ There is no need to spend much time on the burden of proof issue, especially since the bankruptcy court found evidence sufficient under either the clear and convincing standard or the preponderance of the evidence standard. *In re Serafini* is binding precedent. There the tenth circuit adopted the supreme court's reasoning in *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The *Grogan* court held that the preponderance of the evidence standard applies to all exceptions from dischargeability of debts under § 523(a), including nondischargeability for fraud. Although *Grogan* was concerned with § 523(a), the tenth circuit saw "no good reason to apply a different standard where § 727(a)(2) is involved. It would be incongruous to apply a 'preponderance of the evidence' standard to § 523(a) and a 'clear and convincing' standard to § 727(a)(2). Such would be clearly at odds with the rationale in *Grogan.*" 938 F.2d at 1157.

### B. The Continuing Concealment Doctrine

■ In a § 727(a)(2)(A) action the creditor must show that the debtor, with intent to hinder, delay or defraud a creditor, transferred or concealed property of the debtor within one year of the filing date of the petition. Only the debtors' concealment of the property within one year of filing and the debtors' intent to defraud a creditor are at issue in this appeal. The continuing concealment doctrine allows a court to deny discharge if a debtor transfers property outside the one year limitation period if the transfer is concealed or beneficial interests are retained into the prescribed one year period. To take advantage of the doctrine a debtor must demonstrate " 'a transfer of title coupled by the retention of the benefits of ownership.' " *In re Serafini,* 113 B.R. 692, 694 (D.Colo. 1990), *quoting Thibodeaux v. Olivier (In re Olivier),* 819 F.2d 550, 553 (5th Cir. 1987).

■ The trial court concluded that after the transfer in March, 1988, the debtors

continued to treat the personal property as their own. The horses and personal property remained on the debtors' property and in their custody. They personally accepted and deposited the proceeds from the sale of some of the property directly into their personal accounts within one year before the bankruptcy. They treated the horses as their own by claiming deductions in their tax returns. They did not treat "the property any differently following the alleged transfer than they did prior to the transfer." *Order of December 13, 1990*, at 426. The court's findings are not clearly erroneous, especially in light of its role in determining the credibility of the witnesses. Here, the court specifically found the debtors not credible.

## C. Intent to Defraud

■ Proof of a debtor's intent to defraud is rarely susceptible to direct proof and is more usually established by circumstantial evidence or by inferences drawn from a course of conduct. *Farmers Co-op Ass'n v. Strunk*, 671 F.2d 391 (10th Cir. 1982); *In re Martin*, 88 B.R. 319, 322 (D.Colo.1988). Among the so-called badges of fraud that courts have used to identify fraudulent intent are the lack or inadequacy of consideration; the family or blood relationship between transferor and transferee; the retention of possession, benefit or use of the property in question; and a "reckless indifference" to the truth by the debtor. *In re Booth*, 70 B.R. 391, 395 (Bankr.D.Colo.1987); *In re May*, 12 B.R. 618, 626 (N.D.Fla.1980). The bankruptcy court properly found that all three of these badges of fraud were present.

The debtors transferred personal property valued to $53,000 to their daughter and son for consideration of $800. There was no consideration for the transfer of the Mr. Essres' partnership interest in the horse business. The debtors continued to enjoy the benefits of ownership in both the personal property and the horse business after the purported transfers. Finally, the debtors were not only not credible, but they displayed a reckless disregard for the truth in the preparation of their bankruptcy petitions. They failed to list seven bank accounts used in the two years before they filed their petition in bankruptcy. They failed to list as assets two vehicles which they jointly owned with their children. Mr. Essres failed to list a $200,000 shareholder loan made to Essres Realty Co., allegedly because he thought it was worthless. In point of fact, however, he off-set real estate commissions owed to the realty company against the so-called worthless debt.

The bankruptcy court found that the transfer of the horses and personal property were sham transactions, done with the intent to defraud creditors of the debtors. The court's findings are amply supported by credible evidence not otherwise clearly erroneous. Therefore, I affirm the denial of discharge under § 727(a)(2)(A).

## IV. *The Creditor's Cross–Appeal*

■ The creditor claims the bankruptcy court applied the wrong legal standard when it dismissed creditor's § 727(a)(4)(A) claim. He asserts that § 727(a)(4)(A) does not require an intent to hinder, delay or defraud creditors. It only requires that debtors knowingly and fraudulently make a false oath or account in connection with the case. *See, e.g., Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984). Debtors concede that § 727(a)(4)(A) only requires knowing and fraudulent conduct, but assert that the bankruptcy court applied the correct legal standard.

The record, however, is murky. In its oral findings the bankruptcy court stated:

But the Court is satisfied that this failure to list these bank accounts was not done with any intent to defraud creditors or to hinder, delay in any manner.

[T]he Court is satisfied that the omissions that occurred in the schedules were not made with fraudulent intent. I make this finding on the basis of the testimony of the witnesses, by observation of the debtors, and have concluded there was no intent on their part to—there was no fraudulent intent.

The Court is satisfied that no fraudulent intent has been established in connection with the omissions that have been testified to.

Tr. pp. 230, 11. 20–22; 231, 11. 2–7, 25; 232, 11. 1–2. The bankruptcy court's written findings include the following language:

> The Court feels compelled to comment on the Essres' credibility. Although the Court has previously ruled that the Plaintiff failed to prove that the Debtors made a false oath in preparing their bankruptcy schedules, this does not preclude the Court from noting the many contradictions, omissions and discrepancies in the Debtors' Schedules. There are so many that the Court may have been too hasty in dismissing the § 727(a)(4)(A) claim.... Based on the Debtors' conduct the Court concludes that neither Debtor is credible.

*Order of December 13, 1990*, at 427.

The bankruptcy court made these observations in the process of finding that the debtors concealed or transferred property with the intent to defraud, delay or hinder creditors under § 727(a)(2)(A). That is, the court appears to have accepted the evidence of omissions and contradictions in the schedules for purposes of finding intent to defraud under § 727(a)(2)(A) while simultaneously rejecting the sufficiency of that same evidence under § 727(a)(4)(A) for purposes of finding knowingly and fraudulent false oaths or accounts. It is difficult for me to see how the same evidence can serve such different masters consistently, especially since I have always understood "fraudulently" to include intent. In the face of this contradiction, I remand this portion of the case to the bankruptcy court with instructions to clarify its findings.

Accordingly, IT IS ORDERED that the bankruptcy court is affirmed on the appeal and the case is reversed and remanded on the cross-appeal.